THE STATE, S. IRVIN MIDDLETON, PLAINTIFF IN ERROR, v. HENRY S. ROBBINS ET AL., DEFENDANTS IN ERROR.

1. An owner of an inn, which has been licensed for several years at a fee of $150 or less, can prosecute a writ of *certiorari* to try the legality of an order for an election to be held in the township wherein the inn is situated, under section 4 of the act of 1889 (*Pamph. L., p.* 77), to determine whether the minimum fee to be charged for license in that township shall be $5,000. Such inn owner is threatened with a special injury to his property, which entitles him to prosecute a writ of *certiorari*.

2. A citizen who appears in answer to a public notice which has been given under the provisions of the said section, and objects to an order for an election, gains a position as a party to the proceedings which clothes him with an interest sufficient to support his position as prosecutor of a writ of *certiorari* allowed for the purpose of reviewing the proceedings.

3. A taxpayer may prosecute a writ of *certiorari* to review any municipal or official action which tends to burden his taxing district with a debt.

4. A citizen of a township, in the discretion of the court, can sue out a writ of *certiorari*, to test the sufficiency of a notice, directed to be given to the public by the provisions of section 4 of said act, of a hearing before the judge, preliminary to the granting of an order for an election, inasmuch as there exists no other appropriate or adequate method of redress open to such citizen.

5. A public notice, given by a judge, of an election to be held under the provisions of section 4 of the act of 1889, which notice fails to mention the amount of a fee which is to be the subject-matter upon which the electors of a township are to vote is defective, and an order for an election following such notice is invalid.

On error to the Supreme Court. For opinion of the Supreme Court see 24 *Vroom* 555.

For the plaintiff in error, *William E. Potter.*

For the defendants in error, *Charles E. Sheppard* and *Martin P. Grey.*

The opinion of the court was delivered by

REED, J. This writ of error brings up a judgment of the Supreme Court dismissing a writ of *certiorari.* The writ of

*certiorari* dismissed by the Supreme Court had been allowed for the purpose of bringing into that court for its review a petition presented, and the proceedings thereon had, under color of section 4 of the act of 1889. *Pamph. L., p.* 77. The petitioners prayed that the law judge of the county of Cumberland should order an election to be held in the township of Commercial, in said county, under the section of the act already mentioned, to determine whether no fee less than $5,000 should be charged for any license to keep an inn in the said township.

The Supreme Court did not consider at all, the questions raised concerning the regularity of the proceedings thus certified, but dismissed the writ as one improvidently allowed. The order of dismissal was not put upon the ground, that any consideration of public policy or any laches or other conduct on the part of the prosecutor, forbade his prosecution of the writ. The order of the Supreme Court, therefore, was not made in the exercise of that discretionary power of the court which exists in some instances to disallow or dismiss writs otherwise regular. From an order of dismissal made upon such grounds no writ of error lies. *State* v. *Jersey City,* 14 *Vroom* 662; *State* v. *Wood,* 3 *Zab.* 560. The order in this case was made upon the purely legal ground that the party who sued out the writ had no legal standing which would permit him, under any circumstances, to act as its prosecutor. His incompetency in this particular was said to consist in his want to any interest in the result of the questioned proceedings, which entitled him to attack them, by the use of the writ. A dismissal made upon this ground is reviewable upon error. *State, Hoxsey, pros.,* v. *Paterson,* 10 *Vroom* 489. As already remarked, the incompetency of Middleton to stand as the prosecutor of this writ was said to be his want of any interest in the result of the questioned proceedings which entitled him, in this method, to attack them. In considering the soundness of this position, the primary inquiry is, How is the prosecutor related to the proceedings, to review which the writ was allowed.

The prosecutor of the writ was the owner of a house in the township of Commercial then licensed, and which for several years had been licensed, as an inn, at an annual fee not exceeding $150. The petition brought up was for an election to be held under the section mentioned in that township. The expenses of this election, by direction of the section already mentioned, were to be paid out of the funds of the township. The result of the election, if favorable to the imposition of the high license fee, would be to impose a fee never before charged—would, indeed, be to close the house as an inn.

Now, upon this condition of fact appearing upon the record, the Supreme Court concluded that the prosecutor was not entitled to sue out a writ of *certiorari* for the purpose of testing the legality of these proceedings. It was thought that the rule announced by this court in the recent case of *Jersey City* v. *Traphagen,* 24 *Vroom* 434, precluded the prosecutor from prosecuting the writ. The facts in that case were these : The mayor and common council of Jersey City had passed an ordinance legalizing a platform which a railroad company had built nearly across the sidewalk of a public street in Jersey City. A person owning tenement property on the opposite side of the street procured a writ of *certiorari* to test the validity of the ordinance. The Supreme Court set aside the ordinance as one which the common council had no power to enact. This court, upon error, reversed the judgment of the Supreme Court, holding that the Supreme Court, instead of deciding the merits of the case, should have dismissed the writ of *certiorari,* upon the ground that the prosecutor had no special interest distinct from that of the public which entitled him to the use of the writ, and because there was another adequate remedy, either by indictment or information, by which the nuisance could have been abated. The rule thus laid down in that case was, that a person who has suffered no private, direct or material injury, or to whom no such injury is threatened by municipal or official conduct, and to whom there is open another adequate and appropriate

remedy for redress, is precluded from the use of the writ of certiorari. So far as that case settled the law generally, it laid down the principle that when the two conditions concur, namely, the want of special and private interests in the prosecutor and the existence of another adequate method of redress, then the use of the writ of certiorari is inappropriate.

It specifically decided that the prosecutor, as he was circumstanced in that case, could suffer no special injury as distinct from the public, and, further, that the injury was one redressable by information or indictment.

Now, in the present case, a special and direct private injury to the property of the prosecutor is threatened by the proceedings attacked. That his property will be specially depreciated in value, if by reason of the result of this election he is compelled to close his house or to pay the $5,000 fee, is not denied.

But it is insisted by the defendants in error, that at the point of time when the writ was allowed, namely, after the order for an election but before the election had occurred, there was no actual danger of this result, but that the danger was merely contingent. The insistence was, that notwithstanding the fact that the election had been ordered by the judge, yet the injurious results threatened might never materialize; that the election might result in leaving the license question undisturbed; or, if the election resulted otherwise, there is no certainty that if the election had left the question undisturbed the prosecutor would have been able to obtain the requisite number of signers to an application for a license; or that, if he had obtained the requisite signatures to his petition, there is no certainty that the court would have granted him a license; or, if the court had granted the license, there is no certainty that the fee might not have been fixed at $5,000, in any event. Now, it seems obvious that the only real one, of all these alleged contingencies, was in respect to the result of the election. It is not in any degree probable, in the light of the facts properly certified, that the prosecutor would have failed to secure a license at the old fee, if the con-

dition of affairs relative to licenses was left undisturbed in the township. The probabilities of this are at least so strong, that no one can say that the value of the prosecutor's property would not be materially depreciated by a condition of affairs which forbade the granting of a license to his house, except upon the condition that he pay a fee of $5,000. In respect to the result of the election, it is true, of course, that the popular vote might be adverse to the adoption of the mentioned fee. But the consideration which lies at the root of the question respecting the prosecutor's competency, is not whether injury is certain to happen to him by reason of this order, but it is whether the proceeding put in motion is calculated to specially touch the prosecutor adversely. The notion that a writ of *certiorari* can be allowed only when an injury is an accomplished fact, or its happening is an absolute certainty, antagonizes the logical result of all the cases in the Supreme Court, in which the use of the writ has been permitted before final action. An objection to the use of the writ, based upon this theory, would dismiss every writ allowed to bring up a landlord and tenant on forcible entry proceeding, before judgment. The justice or the jury, upon trial, might find in favor of the prosecutor, or the proceeding might be eventually dismissed because of the irregularity, by the justice himself.

And so of many municipal proceedings like those involved in the case of *State, Hoxsey, pros., v. City of Paterson, ubi supra,* and in some of the cases cited in the opinion delivered in the last-mentioned case. There was in these cases, at the time of the allowance of the writ, no certainty that final detrimental action would be taken.

Nothing is certain until judgment is entered by the court or a final order is made by the judge, or final action is taken by the municipal body. The recognized power to arrest such proceedings *in fieri,* by the allowance of a writ of *certiorari,* rests necessarily upon the privilege of a person who is menaced by a result which may happen, but which is in some degree contingent, to prosecute the writ. It is, of course,

obvious that there may be many instances, where an injury to a party from any possible result from judicial or municipal proceedings, would be so faintly probable, that a writ should be disallowed or dismissed. But where the main contingency is only whether the proceedings put in motion will be finally resolved against the prosecutor, such a contingency will afford no grounds for a refusal of a writ, upon the theory of a want of interest in the prosecutor. I think, therefore, that, upon the ground that the election ordered to be held menaced the prosecutor with a depreciation of his property, he had a special interest which entitled him to prosecute the present writ.

Again, by the records brought up, the prosecutor appears in another aspect, which I think entitled him to prosecute the present writ. It appears that after the petition was filed, a notice was given to the public, by order of the judge, under the color of the provisions of section 4 of the act of 1889. The notice apprised those citizens interested, that the judge would, on a certain day and place, hear any person upon any matter which might be brought before him touching said application. The prosecutor appeared at the time and place mentioned as an objector to any order for an election.

It has been settled in the Supreme Court that, when a citizen has appeared as a remonstrant against the granting of a license, and notwithstanding such remonstrance the license has been granted, such citizen can test the legality of such license by *certiorari. Dufford* v. *Nolan,* 17 *Vroom* 87; *Austin* v. *Atlantic City,* 19 *Id.* 118. Both these cases were cited in the opinion delivered in the Traphagen case, in support of the doctrine that, to entitle a person to appear as a prosecutor, he must suffer a special injury. These cases were presented as instances where there existed a special interest in the event, which entitled the remonstrant to a writ.

Now, if a remonstrating citizen has an interest which entitles him to the use of the writ to test the legality of a license, I cannot perceive why an objecting citizen has not the same right to test the legality for an order for an election which

involves exactly the same matter. The statutes in both in-
stances contain provisions for the appearance and objections
of citizens. In both instances the proceedings involve a
matter of public policy of kindred nature. And I think it
unquestionable, that in both instances the citizen who, by
direction of the statutes, comes in and interposes his objection,
becomes a party to the proceeding and is thereby invested with
a peculiar interest which inheres in a party.

The counsel for the plaintiff in error presents another
ground in support of the prosecutor's position. It appears
that, by the provision of section 4 already mentioned, the
expenses of an election held under the act is to be paid out of
the funds of the township. It is insisted, therefore, that the
prosecutor can maintain his position as such by reason of his
being a taxpayer in the township. Now, if the writ is de-
signed to stop or operates to arrest the proceedings after the
order and before the election, this insistence is sound. A long
line of decisions have laid down the rule, that any taxpayer
may prosecute a writ of *certiorari* to review any municipal or
official action which tends to burden his taxing district with a
debt. *State, Gregory, pros., v. Jersey City,* 5 *Vroom* 390;
*Siedler* v. *Hudson County,* 10 *Id.* 632; *State, Hoxsey, pros.,*
v. *Paterson, Id.* 490; *Conover* v. *Davis,* 19 *Id.* 112; *Read*
v. *Atlantic City,* 20 *Id.* 558; *State* v. *Griscom,* 3 *Halst.* 136.

If, however, the writ is intended to test the validity of the
election, and is not to be used as a stay of the election, this
ground in support of the prosecutor's right would not exist.
The expenses of the election would be incurred with or with-
out the writ. A taxpayer would, therefore, have no special
interest in securing a writ which would have no effect in pre-
venting the public expense.

But I do not see why any citizen, without regard to the
matter of public expense, is not legally qualified to act as
prosecutor of a writ to bring up a proceeding like that now
under consideration. The rule laid down in *Ferry* v. *Wil-
liams,* 12 *Vroom* 332, is that a prerogative writ could go at

the instance of private persons, for the redress or prevention of public wrong by public bodies and officers whose official sphere is confined to some political division of the state, whenever the applicant is one of the class of persons to be most directly affected in their enjoyment of public rights, and the public convenience will be subserved by the remedy desired. The relator in that case was a citizen, and he was permitted to use the writ of *mandamus* to secure the inspection of recommendations for licenses which were in the custody of a municipal officer. The rule laid down in the case of Ferry *v.* Williams, so far as it applies to the writ of *certiorari,* was modified in the Traphagen case, if modified at all, by requiring, as a requisite as an allowance of this writ, the non-existence of another appropriate and adequate remedy.

In the present case we have a proceeding, designed by those who put it in motion, to bring about a radical change in the policy of licensing inns in a political division of the state. By the terms of the statute, a public notice to all citizens was one of the steps in the orderly progression from the petition to the popular election. By the policy of the law thus manifested, all citizens, at least all citizens in the political district affected by the result of the election, was a class in interest.

Now, one of the grounds upon which this writ of *certiorari* was allowed, and one of the reasons urged below against the legality of the order for an election, was that no legal notice to the public was given. The effect of such defect, if existing, would be that an order was made which, if those entitled to be heard had been heard, might not have been made. Whether legal notice had been given of the time when and place where the judge would hear objections, was one of the questions which it was intended to try by the use of the writ which was dismissed. Indeed, it could be tested in no other way, for I can conceive of no method by which the result of such an election could be brought in the Supreme Court, other than by means of a writ of *certiorari.* There is an absence of any other method, public or private, by which the steps taken, leading up to this important question, can be reviewed.

The conditions therefore existed which invested every citizen with a capacity to assume the attitude of prosecutor of a writ of *certiorari*, to test the legality of the order made in this case. I am constrained to the conclusion, from the considerations mentioned, that the Supreme Court erroneously dismissed the writ.

Upon arriving at this conclusion, the duty devolves upon this court to render such judgment as the Supreme Court should have rendered upon the merits. *State, Hoxsey, pros.*, v. *Paterson*, 10 *Vroom* 430. Several reasons are leveled at the regularity of the proceedings. One of these reasons, as already remarked, is aimed at the sufficiency of the public notice given by the judge of the time and place of hearing objections. To ascertain the requisites of a legal notice, it is essential that the provisions of the statute shall be stated somewhat in detail. The section 4 of the act of 1889, already mentioned, provides that upon application, by petition, signed by at least one-fifth of the voters of any township, &c., made to the law judge or circuit judge of the county, setting forth the desire of such petitioners, that not less than a certain sum of money, to be named and specified in such petition, be charged for licenses, it shall be the duty of such judge to cause public notice of such application to be given by publication in certain newspapers for two weeks next preceding the hearing of such application; said notice shall fix a time and place when and where said judge will consider said application, at which time and place the judge shall hear any person or persons who shall appear before him, upon the question of such petitioners being legal voters, or any other matter which may be brought before him for his determination touching said application. The statute then provides that if no legal cause exists, why said application should not be granted, the judge shall order an election.

The notice published in the present case announced that an application had been made to the judge, by the requisite number of voters, praying the judge to order an election under the provisions of section 4 of the act of 1889, and that

the judge would hear any person at a designated time and place.

It is objected that this notice was fatally defective, because there was no mention of the amount of the license fee which was to be voted for or against as the minimum sum to be charged. We consider this objection well taken.

We regard this omission as a radical defect in the notice. It is observable that no provision is made in the statute for the filing of a petition, nor any provision for incorporating in the notice any information regarding the place where the petition can be inspected. The design of the statute obviously is that the notice shall contain a full disclosure of the contents of the petition. It should be so full that no resort need be had to the petition itself, to ascertain its contents or its object. Now, the most important feature of the proceeding is the amount of the fee which is fixed upon by the petitioner, as the subject upon which the electors shall be called upon to exercise their will. A notice which fails to state a fact of such prime importance cannot be regarded as a compliance of the legislative requirements. This essential condition precedent to a legal order for an election, being absent, the judge had no jurisdiction to make the order.

This conclusion renders it unnecessary to consider the remaining reasons. The judgment of the Supreme Court must be reversed and the order for an election must be set aside.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, DIXON, GARRISON, MAGIE, REED, WERTS, BOGERT, BROWN, CLEMENT, SMITH. 10.