THE STATE, THE AVON-BY-THE-SEA LAND AND IMPROVE-MENT COMPANY, PROSECUTOR, v. THE MAYOR AND COMMON COUNCIL OF THE BOROUGH OF NEPTUNE CITY.

The council of the defendant municipality did not acquire power to grant a location for the tracks of a street railway of a company incorporated under the act approved April 6th, 1886 (*Pamph. L., p.* 185), without giving notice of a time and place fixed for hearing, or without the consent of property owners, required by said act, by virtue of the provisions of the supplement to said act, approved March 24th, 1890. *Pamph. L., p.* 113.

On *certiorari.*

Argued at June Term, 1894, before Justices MAGIE and GARRISON.

For the prosecutor, *Acton C. Hartshorne.*

For the defendant, *Samuel A. Patterson.*

The opinion of the court was delivered by

MAGIE, J. The *certiorari* in this case has brought before us a resolution purporting to have been adopted by the mayor and council of the borough of Neptune City on July 3d, 1893, and to grant to the Asbury Park and Belmar Street Railway Company a location for tracks of its railway in a highway in said borough, and the proceedings attending the consideration and passage of that resolution.

Prosecutor contends (1) that the resolution was never duly adopted, and (2) that no power had been acquired by the defendant municipality to adopt it.

The latter contention alone requires to be considered.

By the eighth section of the "Act to provide for the organization of street railway companies and to regulate the same," approved April 6th, 1886 (*Pamph. L., p.* 185), the board of aldermen, common council or township committee of any municipality or township, upon the petition of the directors of a company incorporated under that act for a location of the tracks of its railway therein, and upon fourteen days' notice of the time and place at which they would consider such application, published or posted in a specified manner, were empowered and directed, after hearing, to pass an ordinance refusing or granting such location, but the section contained, among other provisos, one which prohibited the passage of an ordinance until the applying company had filed the written consent of the owners of at least one-half of the property fronting on the portion of the highway through which the railway was to be laid.

By an amendatory act approved April 24th, 1888 (*Pamph. L., p.* 541), the eighth section of the original act was amended so as to give like power, with similar restrictions and conditions, to the board of aldermen, common council, board of commissioners, township committee or other governing body of any municipality or township.

By a further supplement, approved March 27th, 1889 (*Pamph. L., p.* 100), the eighth section was further amended so as to give like power, with similar conditions and restric-

tions, to the board of aldermen, common council or township committee of any municipality or township. By this amendment, it will be observed, the power to refuse or grant locations for such railways was conferred on the same governing bodies of municipalities and townships on whom it had been conferred by the original act. The amendment of 1888 was thereby superseded and repealed.

It appears in the case, by the agreement of the attorneys of the parties, that the resolution under review was passed without any notice having been given for a hearing, as required by the legislation above referred to, and that no written consent of the property owners fronting on the highway on which the tracks were located was filed by the railway company.

It was properly conceded in the argument that no power to pass the resolution complained of existed in the defendant municipality under the acts above cited, because of the absence of notice and consent.

Defendant's contention is that, by subsequent legislation, it became endowed with power to pass the resolution without giving any notice or hearing, and notwithstanding the want of the previously required consent of property owners. This force is, it contends, to be attributed to a further supplement to the act first cited, which supplement was approved March 24th, 1890. *Pamph. L., p.* 113.

By this act, it is provided that the board of commissioners or other authority having control of the streets and highways in any borough or other municipality, shall have all the powers in relation to the location of the tracks of the railway of any company organized under the original act or its supplements as were conferred by said act and supplements upon the board of aldermen or common council of any municipality.

On the part of defendant, it is contended that this supplement conferred upon it no new power, but that it is a municipality falling within the classes mentioned in the previous legislation and acquiring powers thereby. In my judgment,

it is immaterial whether this contention can be sustained, for, if defendant acquired its power in this regard under the former acts, it was burdened with the conditions and restrictions before set out. If it acquired power under the supplement of 1890, that power is expressly declared to be the same as that which had been conferred by those acts upon boards of aldermen and common councils, and their power, as we have seen, was equally burdened with the same conditions and restrictions.

The supplement of 1890 further proceeds to enact that where application for a location is made to any board, committee or other authority having control of the streets and highways in any borough or township, such board, committee or other authority shall consider said application and grant or refuse the location by a motion or resolution duly passed for that purpose. Upon this, it is contended for defendant that boroughs and townships are endowed with power to refuse or grant such locations without the restrictions and conditions with which such power is burdened when conferred by this legislation upon other municipalities. But I cannot yield to this contention. The purpose of this supplement was to grant power, with the same restrictions and conditions to municipalities which were not affected by the previous legislation, or to which there might be doubts whether it was applicable. The clause on which this contention is based is plainly intended, not to change the scope and extent of the powers conferred, but only to alter in certain cases the mode of their execution. The previous legislation had required all municipalities to exercise this power by ordinance; this clause was designed to permit the smaller municipalities— townships and boroughs—to exercise this power by the less formal motion or resolution.

The result is that the defendant municipality possessed no power to pass the resolution in question in the absence of the required notice and consent of the property owners.

It is further objected that prosecutor has shown no standing to attack this proceeding. It has been held in this court

that, under existing rules, the allowance of a *certiorari* is an adjudication that the prosecutor therein has a right to the writ, which will maintain his standing in court until it is attacked by evidence. *Athletic Association* v. *New Brunswick*, 26 *Vroom* 279. But the case shows, in my judgment, that prosecutor can maintain this writ. As we have seen, notice is required to be given of a hearing before this resolution could lawfully be passed. Such a hearing involves the right to object and protest. It appears that the council of the borough fixed a time and place for a hearing, though they gave no notice of it. It also appears that there was subsequently presented to the council the written protest against the grant to the railway of many persons claiming to be citizens and freeholders of the borough. Prosecutor joined in that protest, which was received by the council and placed on file. In my judgment, this brings prosecutor within the rule laid down by the Court of Errors in *Middleton* v. *Robbins*, 25 *Vroom* 566, and entitles it to use this writ.

The result is that the resolution must be vacated and set aside, with costs.