THE STATE, ABEL J. BERRY v. ISAAC CRAMER ET AL.

1. The fourth section of the act of March 20th, 1889 (*Pamph. L.,* p. 77), is unconstitutional.
2. Under that section, if valid, a license fee cannot be fixed by popular vote at so great an amount as to be, beyond question, prohibitory of license.

On *certiorari.*

Argued at June Term, 1895, before Justices VAN SYCKEL, MAGIE and LIPPINCOTT.

For the prosecutor, *William E. Potter.*

The opinion of the court was delivered by

VAN SYCKEL, J. This suit is prosecuted to test the legality of the proceedings taken by the voters of the township of Stafford, in the county of Ocean, under the fourth section of the act to regulate the sale of spirituous, vinous, malt and brewed liquors, passed March 20th, 1889. *Pamph. L., p.* 77; *Gen. Stat., p.* 1811.

This act fixes a minimum license fee in respect to population; it gives a discretion to courts and other bodies empowered to grant licenses to fix a greater fee, and the fourth section provides "that upon application by a petition signed

by at least one-fifth of the legal voters voting at the last previous gubernatorial election for governor, of any township, town, borough or city wherein licenses are required to be granted by the Court of Common Pleas of the county, being made to the law judge or circuit judge in and for the county wherein said township, town, borough or city may be located, setting forth the desire of such petitioners that not less than a certain sum of money, to be named and specified in such petition, be charged and paid for licenses thereafter to be granted to sell the liquors aforesaid, or any of them, by less measure than one quart, within such township, town, borough or city," it shall be the duty of such judge to order an election, at which the legal voters shall determine by ballot whether any license shall be granted for any sum less than that specified in such petition.

The first objection to the validity of the proceeding is the radical one that this section of the act is special and local, and therefore unconstitutional.

The provisions stated all come within the title of the act, because all tend to regulate the traffic.

By the fourth section elections can be held only in townships, towns, boroughs and cities wherein licenses are required to be granted by the Court of Common Pleas.

The act, therefore, does not apply where licenses proceed from other authorities.

This limitation of the exercise of the voters to those localities wherein licenses are to be granted by the court, in our judgment, localizes and specializes this provision, for in this respect it is impossible to discover in the characteristic differentiating them from other localities, viz., license by the court, any distinction which will make this legislation germain to them and inappropriate to others.

Even if we could take a different view of this question, a very recent decision of this court constrains us to pronounce the act in this respect to be in contravention of that provision of the state constitution, that "the legislature shall not pass private, local or special laws regulating the internal affairs of towns and counties."

The case referred to is *Loucks* v. *Bradshaw,* 27 *Vroom* 1, in which the validity of the act entitled "An act to create county boards of license commissioners and to define their powers and duties," was challenged.

That act provides for the appointment of boards of license commissioners by the governor of the state, whose powers are thus defined : " They shall have general supervision and control of the wholesale and retail sale of spirituous, vinous and malt liquors, except where license for the sale thereof has been or may hereafter be granted by a court in their respective counties."

The Chief Justice, who delivered the opinion of the court, holding that act to be unconstitutional and void, says : " It is now contended that, by this exceptive clause, the operation of the act is confined to certain localities, and is, therefore, unconstitutional.   And this court is of opinion that this position is well taken.   It is obvious that there is nothing in the subject-matter of this legislation that, from its inherent nature, would make it apposite to some counties and not to others.   The fact that in some counties licenses of the kind in question are granted by a court, and in others proceed from other authorities, is a purely arbitrary distinction, and as such, cannot be laid as the basis of a classification for the purposes of legislation regulating the internal affairs of our counties.   This principle has been so often and fully expounded in the decisions of this court that all discussion on the subject would be superfluous."

This case is directly in point and must rule this controversy.

A further act, passed in 1889, provides that the other provisions of the act of March 20th, 1889, shall not be tainted by the infirmity in the section involved in this case.   *Pamph. L., p.* 360 ; *Gen. Stat., p.* 1814.

A further reason relied upon to vacate the certified proceedings is that they are not authorized by the fourth section of the act of 1889, under which they purport to have been taken.

The grant to the voters of the township is not of power to

make a law, but simply to exercise a discretion as to the amount of the license fee.

The population of Stafford township is one thousand and eighty-nine. The minimum license fee fixed by the voters is $2,000. The case shows, beyond controversy, that such a license fee practically prohibits license, and there can be no doubt that those who voted for it intended to make it prohibitory.

The act of 1888 (*Pamph. L.*, *p.* 142) was a local option law, expressly authorizing license to be prohibited at the option of voters.

The act of 1889 was passed to repeal that feature of the act of 1888 which enabled the people to secure the prohibition of license by a majority vote and to substitute high license as a regulation of the liquor traffic.

The act of 1889 does not contemplate prohibition; it is a license law and not a prohibitory enactment. The fourth section expressly provides that a minimum fee may be fixed, which shall thereafter be charged and paid for licenses. There is nothing in the language of the act itself or in the course of legislation on this subject which indicates an intention to submit to the popular vote the question of prohibition.

The courts, in their discretion in granting license, may exact a fee greater than the minimum fixed by the law, but the court that required a fee so large that, by common consent, the sale would be conceded to be prohibited, would exercise an arbitrary power not conferred upon it, and not a legal discretion within the contemplation of the law. No wider range can be claimed for the discretion confided to the voters of the township. They did not exercise a discretion in respect to license in voting for a license fee of $2,000, for that plainly prohibited any license.

The maximum amount which may be voted in any given case cannot be determined by any absolute standard. That is a difficulty which arises in many cases where discretion is to be exercised. Cases of doubt would properly be solved in favor of the popular will. But, in an instance like this,

where the line is so clearly overstepped, the proceeding can, without hesitation, be pronounced to be unauthorized.  In 1888 the legislature declared that the sale of ardent spirits might be prohibited by the popular vote.  In 1889 that law was repealed, and in its stead was substituted a law providing that, by the popular vote, a minimum license fee might be established, thereby manifestly withdrawing the right to prohibit.  The distinction between license and prohibition is too wide and too well understood to be the subject of doubt or discussion.

The power exercised in this case cannot be upheld without subverting the well-settled rules of statutory interpretation.

It is not the province of a court to declare what, in accordance with a wise public policy, the law should be.  Its simple duty is to expound the law as it has been promulgated, and to determine the extent of the power which the legislature has committed to the political subdivisions of the state.

In this case that power has been clearly exceeded, and the proceedings certified are, therefore, without a legal basis to support them.

The case of *Middleton* v. *Robbins*, 25 *Vroom* 566, was disposed of on technical grounds, without adverting to the questions involved in this case.  *Loucks* v. Bradshaw is a later case and must be accepted as the law of this court.

In our opinion, the proceedings under review must be set aside, but without costs.